1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
9    AT TACOMA

10   MARK A. REID,

11                Plaintiff,                    CASE NO. 12-cv-05709 JRC

12          v.                                  ORDER ON PLAINTIFF'S
                                                COMPLAINT
13   CAROLYN W. COLVIN, Acting
     Commissioner of the Social Security
14   Administration,

15                Defendant.

16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

20   States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

21   15, 16, 17).

22          After considering and reviewing the record, the Court finds that the ALJ evaluated

23
     a number of plaintiff's claimed ailments and concluded that plaintiff still was capable of
24

1 substantial gainful activity. This conclusion is supported by substantial evidence in the

2 record and any errors in the ALJ's findings are harmless. Therefore, this matter is

3 affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

4

5 Plaintiff, MARK A. REID, was born in 1968 and was thirty-nine years old on the

6 alleged date of disability onset of December 13, 2007 (*see* Tr. 135, 142). Plaintiff

7 obtained his GED after dropping out of school in the ninth grade (Tr. 45). He had

8 approximately one month of computer repair training through Portland Community

9 College (Tr. 45-46). Plaintiff's last job was testing salvaged RV appliances at an RV

10 Salvage and Sales. He worked there for over a year, but when his tardiness got worse, he

11 was told not to come in to work (Tr. 46-47).

12

13 Plaintiff has at least the severe impairments of Chronic Fatigue Syndrome,

14 Fibromyalgia, rule out Somatization Disorder, and rule out Adjustment Disorder with

15 Depressed Mood (20 CFR 404.1520(c) and 416.920(c)) (Tr. 23).

16 At the time of the hearing, plaintiff was living alone in an RV on a friend's

17 property (Tr. 45).

PROCEDURAL HISTORY

18

19 Plaintiff protectively filed an application for disability insurance ("DIB") benefits

20 pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits

21 pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act on March 26,

22 2010 (*see* Tr. 135-145). The applications were denied initially and following

23 reconsideration (Tr. 73-75). Plaintiff's requested hearing was held before Administrative

24

Law Judge Mattie Harvin-Woode ("the ALJ") on October 12, 2011 (*see* Tr. 39-71). On October 28, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.20-34).

On July 26, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in August, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on November 13, 2012 (*see* ECF Nos. 12, 13).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) whether or not the ALJ's residual functional capacity assessment was complete, in light of the limitations identified by Dr. Clifford and Dr. Krueger, whose opinions she gave "great weight"; (2) whether or not the ALJ's residual functional capacity assessment was complete, absent limitations related to Mr. Reid's Chronic Fatigue Syndrome; (3) whether or not the ALJ provided legitimate reasons for rejecting the opinions of plaintiff's treating physician, Dr. Green, his treating ARNP, Connie Hoskins, and his treating PA-C, Bonnie Anderson; (4) whether or not the ALJ's Step 2 finding that plaintiff's cervical spine stenosis was non-severe applied the correct legal standard, and whether she was permitted to simply ignore his diagnoses of Irritable Bowel Syndrome (IBS) and Anorexia; (5) whether or not the ALJ's adverse credibility analysis was legally adequate; (6) whether or not the jobs identified by the VE were consistent with the Dictionary of Occupational Titles and the ALJ's hypothetical questions; and (7) whether

1    or not this case should be remanded for payment of benefits, rather than further

2    administrative proceedings (*see* ECF No. 15, p. 2).

3    <u>STANDARD OF REVIEW</u>

4            Plaintiff bears the burden of proving disability within the meaning of the Social

5    Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

6    the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

7    172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

8    (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). Pursuant to 42

9    U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security

10   benefits if the ALJ's findings are based on legal error or not supported by substantial

11   evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

12   2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence"

13   is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a

14   reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v.*

15   *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-

16   26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding

17   the question of whether or not substantial evidence supports the findings by the ALJ, the

18   Court should "'review the administrative record as a whole, weighing both the evidence

19   that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*,

20   108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In

21   addition, the Court must determine independently whether or not "'the Commissioner's

22   decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See*

*Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121,  2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1. **Whether or not the ALJ's residual functional capacity assessment was complete, in light of the limitations identified by Dr. Clifford and Dr. Krueger, whose opinions she gave "great weight."**

1    The ALJ found that plaintiff was capable of performing light work as that is

2    defined in 20 CFR 404.1567(b) and 416.967(b) (Tr. 26). This is referred to as plaintiff's

3    residual functional capacity ("RFC"). A determination regarding RFC "'is an assessment

4    of an individual's ability to do sustained work-related physical and mental activities in a

5    work setting on a regular and continuing basis.'" *Brown v. Astrue*, 405 Fed. Appx. 230,

6    233, 2010 U.S. App. LEXIS 26760 at **6 (9th Cir. 2010) (per curiam) (unpublished

7    opinion) (*quoting id.* at *5) (*citing* 20 C.F.R. § 416.945; *Reddick v. Chater*, 157 F.3d 715,

8    724 (9th Cir. 1998)); *see also* SSR 96-8p, 1996 SSR LEXIS 5 at *5. Residual functional

9    capacity is "the maximum degree to which the individual retains the capacity for

10   sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404,

11   Subpart P, App. 2 § 200.00(c).

12

13   Although an ALJ may not speculate, the ALJ may "draw inferences logically

14   flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999)

15   (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp.

16   19, 20 (N.D. Cal. 1980)); *see also* SSR 86-8, 1896 SSR LEXIS 15 at *22.

17        a.  Dr. Thomas Clifford, Ph.D.

18   Dr. Clifford evaluated plaintiff's records and provided an opinion that was given

19   "great weight" by the ALJ regarding plaintiff's impairments and functional limitations

20   (Tr. 32, 306-23). Although plaintiff contends that "Dr. Clifford's opinion is that Mr. Reid

21   is limited to '1- and 2- step instructions. Clmt recalled 2/3 objects after a 5 min delay"

22   (*see* Opening Brief, ECF No. 15, p. 12), the record does not substantiate plaintiff's

23   position.

24

1    In the narrative portion of his functional capacity assessment, Dr. Clifford

2  indicated the following: "Clmt is able to understand, remember and carry out 1- & 2-step

3  instructions. Clmt recalled 2/3 objects after a 5 min delay. Clmt completed a three-step

4  instruction. MMSE 29/30" (Tr. 309). Although plaintiff complains regarding the fact that

5  the ALJ "did not limit Mr. Reid to 1-2 step instructions," it appears that neither did Dr.

6  Clifford (*see* Tr. 309; *see also* Opening Brief, ECF No. 15, p. 12; Reply, ECF No. 17, p.

7  1). The ALJ inferred properly that Dr. Clifford opined that plaintiff not only was capable

8  of understanding, remembering and carrying out 1- and 2-step instructions, but also had

9  "completed a three-step instruction," with a mini-mental status examination result of 29

10  out of thirty; so that plaintiff could "perform simple and some hands-on tasks or known

11  complex tasks" (*see* Tr. 26, 309). *See Sample*, *supra*, 694 F.2d at 642; *see also Turner v.*

12  *Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

13

14    The Court notes also that the ALJ's allowance for some hands-on or known

15  complex tasks also is supported by the ALJ's citation to plaintiff's testimony of being

16  able to clean his house, ride a lawnmower, paint rooms, as well as repair and use the

17  computer (Tr. 23; *see also* Tr. 56-58, 64-65).

18    Plaintiff also complains that the ALJ did not include into plaintiff's RFC Dr.

19  Clifford's limitations with respect to understanding, remembering and carrying out

20  detailed instructions; performing activities within a schedule, maintaining regular

21  attendance, and being punctual within customary tolerances; and completing a normal

22  workday and workweek without interruptions from psychologically based symptoms and

23

24  performing at a consistent pace without an unreasonable number and length of rest

ORDER ON PLAINTIFF'S COMPLAINT - 7

periods (*see* Opening Brief, ECF No. 15, p. 12). Defendant responds that according to the internal operating manual of the administration, the purpose of the summary conclusions in section 1, cited by plaintiff, is to ensure that the evaluator considered each of the relevant mental activities, as well as any limitations on these activities over a normal workweek, but that it "is the narrative written by the psychiatrist or psychologist in section III ("Functional Capacity Assessment" )  .  .  .  .  that adjudicator [is] to use as the assessment of RFC" (Response, ECF No. 16, pp. 10-11 (*citing* Program Operations Manual System (POMS), DI 25020.0100(B)(1), 2001 WL 1933437).

Although the internal manual is only persuasive authority, defendant also cites Ninth Circuit case law in support of the position that an ALJ does not reject findings by a medical consultant that a claimant had moderate mental functional difficulties, if the ALJ credits the consultant's narrative opinion (*see* Response, ECF No. 16, p. 11 (*citing Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-75 (9th Cir. 2008))). Plaintiff does not distinguish this case before the Court from the situation presented in *Stubbs-Danielson*, in which a claimant had complaint that a moderate limitation as to pace was not accommodated into the RFC (*see* Reply, ECF No. 17, pp. 2-3). *See also Stubbs-Danielson, supra,* 539 F.3d at 1173-74. The Ninth Circuit Court found no error because the ALJ in *Stubbs-Danielson* had included the consultant's opinion from the narrative portion of a limitation to simple tasks. *See id.* Plaintiff's only argument in reply appears to be that the Ninth Circuit reasoning and the direction in the POMS "does not make any sense" and "is unreasonable" (*see* Reply, ECF No. 17, p. 3). Despite plaintiff's contention, this Court is obliged to follow binding precedent that is indistinguishable.

ORDER ON PLAINTIFF'S COMPLAINT - 8

1     Although plaintiff argues that Dr. Clifford's opined limitations equate with a

2     disability finding (*see* Reply, ECF No. 17, p. 3), plaintiff has not demonstrated that his

3     opinion is equal to plaintiff's missing work 15-20 percent of the workday or workweek,

4     through missing work, leaving early or coming in late (*see* Opening Brief, ECF No. 15, p.

5     12).

6         For the reasons stated, and based on the relevant record, the Court concludes that

7     the ALJ did not commit harmful legal error by failing to include any of Dr. Clifford's

8     opinions into plaintiff's RFC.

9         b.  Dr. Keith J. Krueger, Ph.D.

10        Similar to the argument presented in support of plaintiff's position with respect to

11    Dr. Clifford, plaintiff contends that the ALJ erred because although she gave significant

12    weight to the opinion of Dr. Krueger, she did not incorporate into plaintiff's RFC Dr.

13    Krueger's opinions regarding problems getting along with coworkers and supervisors;

14    and his problems in his ability to tolerate the expectations of a normal work setting, such

15    as coming in late or missing work (*see* Opening Brief, ECF No. 15, p. 13 (*citing* Tr.

16    336)).

17        In the check-the-box section of Dr. Krueger's opinion, he indicated that plaintiff

18    suffered from moderate limitations in the areas noted by plaintiff, as well as in his ability

19    to perform routine tasks (*see* Tr. 336). Dr. Krueger indicated his basis for these particular

20    opinions in that plaintiff was too focused on his fatigue, creating moderate difficulties in

21    his ability to tolerate the expectations of a normal work setting; that plaintiff's pain,

22    fatigue, and decreased motivation to do something new would create moderate

difficulties with his ability to perform routine tasks; and that plaintiff's co-workers might tire of hearing plaintiff's tangents and tire of plaintiff's lack of reliability in getting to work, moderately affecting plaintiff's ability to relate appropriately to coworkers and supervisors (*id.*).

Nevertheless, at the end of his opinion regarding plaintiff's specific functional limitations, Dr. Krueger is asked to indicate "what the individual is capable of doing despite his/her impairments" (*id.*). In response, Dr. Krueger indicates as follows:

> Do not see obvious mental factors which would be likely to prevent SGA, other than his own obsession with physical factors. This may pertain in part to a somatoform issue, but even slight improvement in overall physical health could help in this regard.

(Tr. 336).

Dr. Krueger also opined that "getting back to work could be quite useful in terms of sharpening his cognitive focus by giving him more structure in his day, giving him more purpose to his routine" (Tr. 337).

Defendant argues that Dr. Krueger considered plaintiff capable of work despite his limitations and that his opinions were incorporated properly into plaintiff's limitation in his RFC to simple tasks and some hands-on tasks or known complex tasks (*see* Response, ECF No. 16, p. 11).

Residual functional capacity ("RFC") is the most a claimant can do despite existing limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c)(RFC is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of

jobs"). And, given that opinions of moderate limitations must be analyzed in context of a narrative opinion, if offered, and in the context of the record as a whole, *see Stubbs-Danielson, supra,* 539 F.3d at 1173-74, based on the record as a whole, the Court does not find any harmful legal error in the ALJ's failure to include more restrictive limitations into plaintiff's RFC on the basis of Dr. Krueger's opinion.

2.  **Whether or not the ALJ's residual functional capacity assessment was complete, absent limitations related to Mr. Reid's Chronic Fatigue Syndrome**.

The ALJ found that plaintiff suffered from a severe impairment of chronic fatigue syndrome, thereby finding that this impairment had more than a minimal effect on plaintiff's ability to work (Tr. 23). Plaintiff appears to argue that the ALJ erred because she did not attribute any specific limitations in plaintiff's RFC to his fatigue (*see* Tr. 26; *see also* Opening Brief, ECF No. 15, p. 13). In support of this argument, plaintiff offers his testimony of how it takes him a long time to get going in the mornings, how he needs periods of rest during the day and how he cannot sustain any activity for a full eight-hour day because of his fatigue (*id.*). However, the ALJ did not credit plaintiff's testimony to the extent of limitations as alleged by plaintiff, and this finding is supported by clear and convincing reasons, as discussed further below, *see infra,* section 6.  Although plaintiff also cites to the opinion of Dr. Clifford to support his argument, the Court already has found that the ALJ did not err by failing to incorporate any further limitation into plaintiff's RFC on the basis of Dr. Clifford's opinion, *see supra,* section 1.a (*id.* at p. 14

(*citing* Tr. 306-07)). Plaintiff also cites to the opinion of ARNP Connie Hoskins, which will be discussed below, *see infra*, section 4 (*id.* (*citing* Tr. 280)).

Furthermore, defendant responds that according to the Ninth Circuit, a severe impairment does not necessarily indicate that a claimant has any particular subsequent limitations that require accommodation (*see* Response, ECF No. 16, p. 16 (*citing Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) ("[plaintiff] offers no authority to support the proposition that a severe mental impairment must correspond to limitation in a claimant's ability to perform basic work activities")).

For the reasons discussed in this opinion and based on the relevant record, the Court finds no error in the ALJ's failure to include further limitation into plaintiff's RFC on the basis of plaintiff's testimony; the finding that plaintiff's chronic fatigue syndrome was severe; or Dr. Clifford's or ARNP Hoskins' opinions.

3. **Whether or not the ALJ provided legitimate reasons for rejecting the opinions of plaintiff's treating physician, Dr. Thomas Green, M.D.**

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9). However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In addition,

"[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan, supra,* 169 F.3d at 602 (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432, 433-34 (9th Cir. 1988))).

Defendant correctly notes that the medical evidence regarding plaintiff's impairments and limitations was contradicted, as was Dr. Green's opinion of disabling limitations from the mental impairment of somatization disorder.

The Court notes that the ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).   If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).  It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601 (9th Cir. 1999)).

If a treating physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record."

1   *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d

2   1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

3   thorough summary of the facts and conflicting clinical evidence, stating his interpretation

4   thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)

5   (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

6          In general, more weight is given to a treating medical source's opinion than to the

7   opinions of those who do not treat the claimant.  *Lester, supra*, 81 F.3d at 830 (*citing

8   *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  On the other hand, an ALJ need

9   not accept the opinion of a treating physician, if that opinion is brief, conclusory and

10  inadequately supported by clinical findings or by the record as a whole. *See Batson v.*

11  *Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004)

12  (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Thomas v.*

13  *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

14

15         Here, based on the relevant record, and for the reasons discussed below, the Court

16  concludes that Dr. Green's opinion of disabling limitations from somatization disorder is

17  brief, conclusory and inadequately supported by clinical findings, such as a mental status

18  examination or specific opinions regarding plaintiff's cognitive and social limitations (*see*

19  Tr. 226-31). *See Batson, supra*, 359 F.3d at 1195. Dr. Green indicates his opinion

20  regarding psychiatric limitations without any objective findings offered in support (*see,*

21  *e.g.*, Tr. 227, 228).

22

23

24

1    Plaintiff admits that Dr. Green's diagnosis of a somatization disorder may be

2  suspect as Dr. Green is not an expert in mental health, however plaintiff argues that the

3  ALJ erred in not fully crediting Dr. Green's opinion of plaintiff's marked limitations due

4  to his somatization disorder (*see* Opening Brief, ECF No. 15, p. 15). Plaintiff contends

5  that Dr. Green's opinions were consistent with the objective medical evidence (*id.*).

6    The Court first notes that a doctor does not have to be a specialist in mental health

7  in order to provide a medical opinion regarding mental health limitations, although area

8  of specialty is a relevant factor to be considered. *See, e.g., Van Nguyen v. Barnhart,* 170

9  Fed. Appx. 471, 473 (9th Cir. 2006) (per curiam) (unpublished opinion) ("the ALJ may

10 not discredit [the treating general physician's] opinion on the ground that she is not a

11 board certified psychiatrist") (*citing Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

12 1987)); *Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 120 n.4 (6th Cir. 2010); 20

13 C.F.R. § 404.1527(c)(5). The Ninth Circuit specifically has indicated that "it is well

14 established primary care physicians (those in family or general practice) 'identify and

15 treat the majority of Americans' psychiatric disorders.'" *See Sprague, supra*, 812 F.2d at

16 1232 (*citing* C. Tracy Orleans, Ph.D., Linda K. George, Ph.D., Jeffrey L. Houpt, M.D.

17 and Keith H. Brodie, M.D., How Primary Care Physicians Treat Psychiatric Disorders: A

18 National Survey of Family Practitioners, 142 Am. J. Psychiatry 52 (Jan. 1985)). As

19 indicated by the Ninth Circuit, if "the Magistrate [Judge]'s conclusion that there was no

20 psychiatric evidence is based on an assumption that such evidence must be offered by a

21 Board-certified psychiatrist, it is clearly erroneous." *Sprague, supra*, 812 F.2d at 1232.

1    However, defendant responds that a psychological opinion that is unsupported by

2    clinical evidence is rejected properly (*see* Response, ECF No. 16, p. 13 (*citing Bayliss*,

3    427 F.3d at 1217)).

4        The ALJ included the following discussion in his written opinion:

5            Little weight is given to the opinion of Thomas Green, MD, who
6            conducted a physical evaluation of the claimant.  While Dr. Green
             determined that the claimant had no physical limitations, he also
7            determined that the claimant would likely qualify for benefits based on
             his psychiatric conditions because his somatization disorder was marked
8            and would interfere with the claimant's ability to perform basic work
             activities. Whether or not a claimant will qualify for benefits is a
9            determination reserved for the Commissioner.  In addition, Dr. Green
             was conducting a physical evaluation not a mental evaluation and is not
10           an expert in mental health.  No objective evidence is used to support his
             opinion and his opinion is inconsistent with the objective medical
11           evidence in the record (Exhibit 2F/24-27).

12   (Tr. 32).

13       Although the ALJ did not offer any particular inconsistency between Dr. Green's

14   opinion of disabling somatization disorder and the objective medical evidence, the ALJ's

15   finding that Dr. Green did not support his opinion with any objective evidence both is

16   supported by substantial evidence in the record and is a specific and legitimate reason in

17   the context of Dr. Green's opinion for its rejection. *See Batson, supra*, 359 F.3d at 1195.

18   Although an ALJ's finding that a doctor's opinion is not supported by objective evidence

19   is not legitimate when the doctor has substantiated the opinion with psychological tests,

20   mental status examinations, and objective observations or descriptions of plaintiff's

21   symptoms, here, none of the above are supplied by Dr. Green in support of his conclusory

22   opinion of disabling somatization disorder.

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 16

4. **Whether or not the ALJ provided legitimate reasons for rejecting the opinions of ARNP Connie Hoskins and PA-C Bonnie Anderson.**

Plaintiff complains that the ALJ erred by failing to credit opinions from ARNP Connie Hoskins and PA-C Bonnie Anderson due to inconsistency with the objective medical evidence, because the ALJ did not specify what medical evidence was inconsistent (*see* Opening Brief, ECF No. 15, pp. 15-16). Defendant responds that the ALJ need not cite to the specific record as long as arguably germane reasons are supplied for the rejection of lay testimony, "even though the ALJ does 'not clearly link h[er] determination to those reasons,'" as long as substantial evidence supports the ALJ's findings (*see* Response, ECF No. 16, p. 15 (*citing Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)). Defendant also notes that the ALJ's decision clearly indicates greater weight was provided to the opinion of Dr. Krueger, who opined that plaintiff was less limited than these lay sources.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," *see* 20 C.F.R. § 404.1513 (a), there are "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.

2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

However, "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources. *See* SSR 06-03p, 2006 SSR LEXIS 5 at *3-*4 (internal citations omitted). Nevertheless, evidence from "other medical" sources, that is, lay evidence, can demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* at *4. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.* The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (*quoting Van Nguyen, supra*, 100 F.3d at 1467) (*citing Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)).

1    Relevant factors when determining the weight to be given to an "other medical

2    source" include:

3        How long the source has known and how frequently the source has seen
         the individual; How consistent the opinion is with other evidence; The
4        degree to which the source present relevant evidence to support an
         opinion; How well the source explains the opinion; Whether [or not] the
5        source has a specialty or area of expertise related to the individuals'
         impairments(s), and Any other factors that tend to support or refute the
6        opinion.

7    SSR 06-3p, 2006 SSR LEXIS 5 at *11. In addition, the fact "that a medical opinion is

8    from an 'acceptable medical source' is a factor that may justify giving that opinion

9    greater weight than an opinion from a medical source who is not an 'acceptable medical

10   source' because  .  .  .  'acceptable medical sources' 'are the most qualified health care

11   professionals." *Id.* at *12. However, "depending on the particular facts in a case, and after

12   applying the factors for weighing opinion evidence, an opinion from a medical source

13   who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable

14   medical source,' including the medical opinion of a treating source." *Id.* at *12-*13.

15       a.  Ms. Connie Hoskins, ARNP

16   The ALJ included the following in her written decision:

17       The opinion of Connie Hoskins, ARNP, is given little weight.  She
         determined that the claimant was not employable because of his mental
18       health issues (Exhibit 3F/27).  Ms. Hoskins' opinion about the
         claimant's mental health is not consistent with the opinions of his
19       mental health evaluations and the objective medical evidence.
         Although, Ms. Hoskins treated the claimant on a few occasions, the
20       claimant's records indicated she has not treated him since 2008.  The
         longitudinal medical record does not support her conclusions about his
21       mental health. However, her DSHS evaluation of the claimant's
         physical condition is given some weight, as it is consistent with the
22       objective medical evidence in the record.  She determined that the
23
24

claimant was only limited to medium work and found that he only had
mild limitations from his fatigue, and pain (Exhibit 2F).

(Tr. 31).

The ALJ gave greater weight to the opinion of Dr. Krueger. Because Dr. Krueger

is an acceptable medical source; and based on the record as a whole, the Court concludes

that the ALJ provided germane reasons supported by substantial evidence in the record as

a whole for her failure to credit fully all of the opinions of ARNP Hoskins. *See Turner,*

*supra*, 613 F.3d at 1224; SSR 06-3p, 2006 SSR LEXIS 5 at *11 (Relevant factors when

determining the weight to be given to another medical source include: "How long the

source has known and how frequently the source has seen the individual; How consistent

the opinion is with other evidence").

   b.  Ms. Bonnie Anderson, PA-C

The ALJ included the following in her written decision:

> Bonnie Anderson, OPAC, another one of the claimant's treatment
> providers also did a DSHS evaluation of the claimant.  She opined that
> the claimant was limited to sedentary work because of his pain,
> weakness, and fatigue.  She opined that he would have limitations
> bending, climbing, crouching, and sitting.  She recommended the
> claimant have additional testing and workups from the specialty
> referrals he requested.  Little weight is given to Ms. Anderson's
> opinion.  Although, she treated the claimant her opinion is not
> consistent with the objective medical evidence in the record.  It is also
> inconsistent with the findings of the  specialists she sent the claimant
> too (sic).  In addition her opinion is somewhat inconsistent with her
> own treatment notes where she supports mental health treatment for the
> claimant's  physical symptoms and reports that all of his test
> results are normal (Exhibits 2F/48, 49, 3F/3,  6, and 22F/4).

(Tr. 31).

The ALJ's findings are supported by substantial evidence in the record, such as her finding that PA-C Anderson's opinion was inconsistent with her own treatment notes detailing some of plaintiff's normal test results (*see* Tr. 252-53 ("all normal findings"), 259 ("numerous tests have been run by myself and previous providers all of which come up negative"); *see also* Tr. 256, 391). Based on the relevant record, the Court concludes that the ALJ provided germane reasons for her failure to credit fully Ms. Anderson's opinions.

5. **Whether or not the ALJ's Step 2 finding that plaintiff's cervical spine stenosis was non-severe applied the correct legal standard, and whether she was permitted to simply ignore his diagnoses of Irritable Bowel Syndrome (IBS) and Anorexia**.

Here, plaintiff complains of the ALJ's failure to find severe plaintiff's cervical spine stenosis, irritable bowel syndrome ("IBS") and anexoria (*see* Opening Brief, ECF No. 15, pp. 16-17; Reply, ECF No. 17, pp. 6-7). Plaintiff points to his testimony and complaints of neck pain and his MRI, as well as his more probable than not diagnosis of IBS by Dr. Britinger, along with his alleged need for frequent bathroom breaks (*see* Opening Brief, ECF No. 15, p. 17 (*citing* Tr. 386-87)). Defendant contends that the ALJ properly considered plaintiff's cervical spine stenosis complaints and found them non severe; and also contends that the ALJ's failure to discuss explicitly plaintiff's IBS and anexoria is at most harmless error as plaintiff has failed to demonstrate that he met his burden to establish any functional limitations resulting from these alleged severe impairments (*see* Response, ECF No. 16, pp. 2-4).

1    Step two of the administration's evaluation process requires the ALJ to determine

2   whether or not the claimant "has a medically severe impairment or combination of

3   impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted);

4   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe"

5   if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R.

6   §§ 404.1521(a), 416.921(a).  "An impairment or combination of impairments can be

7   found 'not severe' only if the evidence establishes a slight abnormality that has 'no more

8   than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80 F.3d at

9   1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social

10   Security Ruling "SSR" 85-28)).

11

12   a.   Cervical spine stenosis

13   The ALJ included the following in her written decision:

14       The claimant has alleged cervical degenerative disc disease, headaches,
         passive-aggressive personality features, and alcohol abuse, which are

15       found not severe because they do not cause more than minimal
         limitations to his ability to perform basic work activities.  The claimant

16       has complained of neck pain and had two MRIs of his neck. The MRI
         in 2008 showed a broad based disc bulge at C3-C4 with focal canal

17       stenosis and bilateral neural foraminal narrowing (Exhibit 3F/35).
         There were no cord signal abnormalities and a later nerve conduction

18       test showed no neuropathy or nerve involvement (Exhibit 14F).  A
         2008 physical examination with Connie Hoskins, ARNP, showed a full

19       range of motion in the C-spine and no tenderness.  She characterized it
         as a completely normal examination and opined that his condition was a

20       mental health issue rather than a c-spine issue (Exhibit 3F/27).  The
         claimant requested a rigid neck collar (Exhibit 3F/16).  An MRI in 2010

21       showed a normal cervical spine except for ''mild degenerative disc
         disease" (Exhibit 20F/2).  The claimant saw Thomas Green, MD, in

22       2010 and he found that the claimant had a full range of motion in the
         neck in all directions and rotation without pain and without tenderness.

23       Dr. Green asked the claimant to tell him how his neck bothers him and

24

1
2
3
4
5
6
7
8
9

> the claimant reverted to the MRI descriptions and diagnostic terms rather than symptoms (Exhibit 4F/3-4).  The claimant saw Gregory Bell, MD, a neurologist for his neck pain.  His physical examination showed full range of motion with diffuse tenderness and no crepitus.  The claimant had a negative straight leg-raising test, and Dr. Bell found no evidence of intrinsic muscle disease.  He determined that the results were consistent with a diagnosis of fibromyalgia and should be treated conservatively.  He recommended stretching and physical therapy (Exhibit 14F/2, 8).  The claimant testified that he had to move his entire body to look at his representative during the hearing, however, the undersigned observed the claimant turning his neck to look at his representative.  The claimant testified that he is able to clean, paint rooms, use the computer and use a rider mower, which indicate that he can be active despite his neck pain. The claimant's cervical degenerative disc disease does not appear to cause more than minimal limitations and is not a severe impairment.

10

(Tr. 23).

11

12

        Based on a review of the record, the Court concludes that the ALJ's findings

13

regarding plaintiff's cervical disc disease and cervical stenosis are supported by

14

substantial evidence in the record, such as her finding that plaintiff's nerve conduction

15

test and EMG studies were normal in the upper extremities and that there was no

16

"electrodiagnostic evidence for median, ulnar or radial sensory neuropathies, brachial

17

plexopathy nor for cervical radicular process to explain the patient's paresthesias" (*see*

18

Tr. 355). At his 2008 examination with ARNP Hoskins, she assessed that his C-spine and

19

trapezius muscles were "nontender to palpation, and he has full, nontender ROM" (*see*

20

Tr. 280). ARNP Hoskins opined that it was a "completely normal exam," with respect to

21

his neck (*see id.*). In addition, Dr. Gregory D. Bell, M.D. described plaintiff's MRI

22

results as follows: "Normal brain and cervical spine MRI except for mild disc bulge at

23

C3-4 on the neck study" (Tr. 381). He was assessed as having full range of motion in his

24

neck "in all directions and rotation, w/o pain" on March 16, 2009 by Dr. Thomas Green (*see* Tr. 292; *see also* Tr. 361 ("Neck: supple with full range of motion")).

The Court concludes that the ALJ's findings regarding plaintiff's cervical disc disease and cervical spine stenosis are supported by substantial evidence in the record as a whole. Based on the record as a whole, the Court also concludes that the ALJ adequately discussed plaintiff's alleged cervical neck pain and limitations and found appropriately that he suffered no more than a minimal effect on his ability to work as a result of this impairment. Plaintiff has not demonstrated that this limitation is severe.

b. Plaintiff's alleged anexoria

Plaintiff argues that the ALJ erred in failing to consider his anexoria to be a severe impairment, but cites to nothing but a diagnosis to substantiate his claim of functional limitations (*see* Opening Brief, ECF No. 15, p. 15 (*citing* Tr. 386-87)). A diagnosis by itself, along with some noted weight loss and a comment that he "is only 10 pounds below" does not establish that plaintiff's anexoria had more than a minimal effect on his ability to work (*see* Tr. 386). Plaintiff offers no reply to defendant's argument that plaintiff has failed to demonstrate any harm in the ALJ's failure to acknowledge his anexoria and does not reply to defendant's argument that plaintiff "identifies no functional limitation caused by Plaintiff's alleged anexoria that the ALJ failed to include in the RFC" (Response, ECF No. 16, p. 4).

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The Court noted multiple instances of the application of these principles. *Id*. (collecting

cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts should review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

For the stated reasons and based on the relevant record, the Court concludes that the ALJ should have mentioned plaintiff's anexoria, as it was a diagnosed impairment, but the error is harmless as it is 'inconsequential to the ultimate nondisability determination.'" *See Molina*, *supra*, 674 F.3d at 1115 (*quoting Carmickle*, *supra*, 533 F.3d at 1162).

c. Plaintiff's alleged IBS

Defendant's argument that plaintiff's IBS was not a diagnosed impairment is not persuasive as medical certainty does not require absolute certainty (*see* Tr. 387 (Dr. Anne Breitinger, M.D. opines "most likely he has irritable bowel syndrome")). In support of his contention that the failure to discuss his IBS was in error, plaintiff argues that the ALJ

failed to include the need for frequent bathroom breaks due to IBS into plaintiff's RFC (*see* Opening Brief, ECF No. 15, pp. 16-17). However, plaintiff cites no evidence supporting this limitation.

Dr. Breitinger opines that plaintiff suffered from IBS, but notes plaintiff was "only 10 pounds below" and also notes her assessment that his upper endoscopy that she recently had done on plaintiff on September 7, 2010 was "normal except for a slightly irregular z-line" (*see* Tr. 386). Dr. Breitinger also indicated that plaintiff's "CLO test was negative of the stomach, which appeared normal and also the duodenal biopsies to rule out celiac sprue were negative. He does continue to smoke" (*id.*).  Although Dr. Breitinger indicated her assessment that plaintiff "most likely" had IBS, she also indicated that she did "not want to proceed with other testing until we have more laboratory results" (Tr. 387). There does not appear to be any indication from the record that plaintiff had any abnormal laboratory results.

For the stated reasons and based on the relevant record, the Court concludes that the ALJ should have mentioned plaintiff's IBS, as it was a diagnosed impairment, and should have discussed it further, but the error is harmless as it is 'inconsequential to the ultimate nondisability determination.'" *See Molina*, *supra*, 674 F.3d at 1115 (*quoting Carmickle*, *supra*, 533 F.3d at 1162).

6. **Whether or not the ALJ's adverse credibility analysis was legally adequate**.

Here, the ALJ discounted plaintiff's credibility, in part, because the objective medical evidence did not support the degree of limitation and pain (*see* Tr. 27-32).

Because plaintiff produced medical evidence of an underlying impairment, the ALJ could not discredit claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407). Here, the ALJ also relied on inconsistent statements made by plaintiff with respect to his medical record. *See Bunnell, supra*, 947 F.2d at 343, 346-47 (*citing Cotton, supra*, 799 F.2d at 1407).  Additionally, the ALJ also cited plaintiff's lack of treatment compliance.  These additional reasons, together with the lack of objective medical evidence, are clear and convincing reasons to discount plaintiff's credibility.

　　　If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999); *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence."  *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1896 SSR LEXIS 15 at *22.

1    Nevertheless, the ALJ's credibility determinations "must be supported by specific,

2    cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).

3    In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must

4    specifically identify what testimony is credible and what evidence undermines the

5    claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting

6    Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick,

7    supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

8    Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility

9    evaluation," including the claimant's reputation for truthfulness and inconsistencies in

10    testimony, and may also consider a claimant's daily activities, and "unexplained or

11    inadequately explained failure to seek treatment or to follow a prescribed course of

12    treatment." *Smolen, supra*, 80 F.3d at 1284; *see also Verduzco v. Apfel*, 188 F.3d 1087,

13    1090 (9th Cir. 1999) (reliance on inconsistent statements concerning drug use proper).

14    

15    The determination of whether or not to accept a claimant's testimony regarding

16    subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929;

17    *Smolen, supra*, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).

18    First, the ALJ must determine whether or not there is a medically determinable

19    impairment that reasonably could be expected to cause the claimant's symptoms. 20

20    C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Once a claimant

21    produces medical evidence of an underlying impairment, the ALJ may not discredit the

22    claimant's testimony as to the severity of symptoms "based solely on a lack of objective

23    medical evidence to fully corroborate the alleged severity of pain." *Bunnell, supra*, 947

1   F.2d at 343, 346-47 (*citing Cotton, supra*, 799 F.2d at 1407). Absent affirmative

2   evidence that the claimant is malingering, the ALJ must provide specific "clear and

3   convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at

4   1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th

5   Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

6           a.   Objective medical evidence

7           Here, the ALJ provided an exhaustive and detailed summary of the medical

8   evidence, demonstrating that plaintiff's complaints of pain and allegations of limitations

9   are not supported by the objective medical evidence (*see* Tr. 27-32). The ALJ's

10  discussion reveals statements made by plaintiff inconsistent with his allegations of

11  disabling symptoms, as well as revealing that plaintiff's medical records "note that

12  extensive laboratory work has been done on the claimant and all returned with normal

13  results" (*see* Tr. 28). This finding by the ALJ is supported by substantial evidence in the

14  record (*see, e.g.*, Tr. 220 ("ø sad, optimistic, ø adhedonia"), Tr. 256 ("optimistically

15  depressed" and "denies depression"), Tr. 281 ("denies any mood symptoms at present"),

16  Tr. 283 ("patient states his depression symptoms have recently improved somewhat  .  .

17  .  .")), Tr. 309 (Dr. Clifford, mini-mental status examination result of 29 out of 30), Tr.

18  259 ("numerous tests have been run by myself and previous providers all of which come

19  up negative"), Tr. 280 ("NECK: C-spine and trapezius muscles are nontender to

20  palpation, and he has full, nontender ROM (completely normal exam)", Tr. 355 ("normal

21  NCS and EMG in the upper extremities. No electrodiagnostic evidence for median,

22  ulnar, or radial sensory neuropathies, brachial plexopathy nor for cervical radicular

process to explain the patient's paresthesias. No evidence for intrinsic muscle disease

identified"), Tr. 361 ("Neck: Supple with full range of motion. Diffuse tenderness

throughout the cervical, thoracic and lumbosacral spine though somewhat greater in the

C3 through C5 area in the midline. No crepitus or range of motion limitations. Negative

Spurling's, negative L'Hermitte's. No cervical adenopathy, carotid bruits or thyromegaly.

Back. Negative straight leg raise testing, negative axial load test  .  .  .  .  Mini Mental

Status Exam score is 30/30"), Tr. 381 ("Normal brain and cervical spine MRI except for

mild disc bulge at C3-4 on the neck study and mild inflammatory changes in the ethmoid

sinus, not likely of clinical significance, on the cranial study")).

Therefore, the Court concludes that the ALJ's reliance on the objective medical

evidence in part for her failure to credit fully plaintiff's allegations is proper and

supported by substantial evidence in the record.

b.  Plaintiff's statements inconsistent with treatment record

The ALJ additionally relied on plaintiff's statements inconsistent with the

treatment record when failing to credit fully plaintiff's testimony and allegations (Tr. 28-

31). Although plaintiff offers a different interpretation of the record regarding plaintiff's

ability to obtain his prescription of Gabapentin, the ALJ's interpretation is supported by

substantial evidence in the record (*see* Tr. 29, 53-54).

Plaintiff testified regarding his recommended prescription of Gabapentin that he

"was advised that a one month supply wasn't going to be enough to establish whether

that would be effective or not without any means to get more for at least a three month  .

.  .  ." (53-54). When asked if he looked around for a generic version at Walmart, or

1    attempted to get assistance to get the medication, plaintiff testified "I'm sure that I did"

2    (Tr. 53). When pushed to ask if he really was sure that he did, plaintiff testified "I don't

3    recall. I know that that's something I would have done likely but I don't recall. There was

4    a period  .  .  .  .  there was a lot of things  .  .  .  ." (*id.*).

5            In her written decision, the ALJ indicated as follows:

6
7            At [plaintiff's] visit in January of 2001, the claimant inquired whether he
             should start the Gabapentin when he did not have insurance and would
             not be able to afford to refill the medication. The treatment provider,
8            Bonnie Anderson, PAC, assured the claimant that he could get samples
             or assistance getting the medication if it worked for him (Exhibit
9            22F/24).

10   (Tr. 29).

11           According to the treatment record, of PA-C Anderson, plaintiff "has trial of

12   gabapentin he was concerned if he can start this since he no longer has insurance and

13   cannot get refills. Assured him if this helps his fm, we can do hall's pack or the like" (pt

14   assistance)" (Tr. 411).

15           Based on a review of the relevant record, the Court concludes that the ALJ's

16   interpretation of the record is supported by substantial evidence in the record as a whole.

17
18   In addition, the ALJ's reliance on plaintiff's statements inconsistent with the treatment

19   record provides a valid consideration supporting the ALJ's failure to credit fully

20   plaintiff's version of his treatment history and his limitations resulting from his

21   impairments.

22           c.  Plaintiff's failure to follow prescribed treatment

23

24

The ALJ also relied on plaintiff's failure to follow prescribed treatment for her failure to credit fully his allegations (*see* Tr. 28). The Court already has discussed plaintiff's failure to attempt recommended treatment with Gabapentin, and this finding by the ALJ also supports the inference by the ALJ that plaintiff was not following through with prescribed treatment, and her further inference that his lack of treatment suggest that his functional limitations and pain are less than alleged (*see* Tr. 29, 411).

Although plaintiff also testified that he cannot afford treatment, such as $4 Celexa at Walmart, the ALJ noted that plaintiff testified that he smoked a pack of cigarettes per day and drank a couple of beers a week (*see* Tr. 29; *see also* Tr. 28, 256).

The ALJ also noted that plaintiff refused mental health treatment (*see* Tr. 28). The record demonstrates that plaintiff was "given samples of Seroquel to try in the past but never took them. Given Remeron, discontinued for unknown reasons" (Tr. 256).

The ALJ's finding that plaintiff failed to comply with recommended treatment, for reasons other than his inability to pay for treatment, is supported by substantial evidence in the record as a whole. The Court also concludes that this reason was relied on properly by the ALJ when evaluating plaintiff's credibility and his testimony regarding his specific impairments and limitations.

For the stated reasons and based on the record as a whole, the Court also concludes that the ALJ relied properly on the objective medical evidence; plaintiff's statements inconsistent with the treatment record; and plaintiff's failure to follow recommended treatment when evaluating plaintiff's credibility and that the ALJ provided clear and convincing reasons for her failure to credit his allegations fully. Although not

1   every reason offered by the ALJ provided support for her adverse credibility

2   determination, the reasons supplied were clear and convincing and the Court finds at

3   most harmless error. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th

4   Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's

5   conclusions on  .  .  .  .  credibility' and the error 'does not negate the validity of the

6   ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant

7   reversal") (*citing Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004);

8   *Stout, supra*, 454 F.3d at 1055). The Court concludes that the ALJ's remaining reasoning

9   and ultimate credibility determination are supported adequately by substantial evidence in

10  the record. *See id.* (*citing Batson, supra*, 359 F.3d at 1197).

11

12      7.  **Whether or not the jobs identified by the VE were consistent with the
            Dictionary of Occupational Titles and the ALJ's hypothetical questions**.

13          In support of this argument, plaintiff again contends that Dr. Clifford limited

14  plaintiff to 1-2-step instructions (*see* Opening Brief, ECF No. 15, pp. 22-23). However,

15  the Court already has upheld the ALJ's contrary finding in her RFC that plaintiff could

16  perform simple and some hands on tasks or known complex tasks, *see supra*, section 1.a;

17  *see also supra*, sections 2-4, 6 (*see* Tr. 26). Therefore, plaintiff's argument that the ALJ's

18  RFC determination and the hypothetical presented to the vocational expert are not

19  consistent with the jobs identified by the vocational expert is not persuasive.

20

21                              <u>CONCLUSION</u>

22          Based on the stated reasons and the relevant record, the Court **ORDERS** that this

23  matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

24

1    **JUDGMENT** should be for defendant and the case should be closed.

2    Dated this 30th day of September, 2013.

3

4                                         J. Richard Creatura
                                          United States Magistrate Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24